```
              UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF NORTH CAROLINA
                     WESTERN DIVISION
                   No. 5:07-HC-2101-BO
```

UNITED STATES OF AMERICA,    )
                             )
            Petitioner,      )
                             )
     v.                      )
                             )
JEFFREY NEUHAUSER,           )
                             )
            Respondent.      )

GOVERNMENT'S RESPONSE TO RESPONDENT'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FILED ON JUNE 23, 2010

The United States of America, by and through the United States Attorney for the Eastern District of North Carolina, hereby submits this Supplemental Response to Respondent's Motion to Dismiss.

STATEMENT OF THE CASE

On June 23, 2010, the respondent filed a motion to dismiss challenging the constitutionality of the pending 18 U.S.C. § 4248 proceeding. On October 6, 2010, the respondent, with the leave of the Court, filed a supplemental memorandum in support of his June 23, 2010 motion to dismiss.

Within his original motion, the respondent cites the Due Process, Equal Protection, Double Jeopardy and Ex Post Facto violations as a result of his detention under § 4248. Additionally, respondent alleges the Act violates the Eighth Amendment Prohibition against cruel and unusual punishment and the Sixth Amendment right to a jury trial. All of these issues

have been presented to the Court of Appeals in <u>United States v. Comstock</u>. The issues raised in <u>Comstock</u> on remand are identical to the issues raised in the case at hand in the previous motion to dismiss.

Within the respondent's supplemental memorandum the respondent alleges additional deficiencies, arguing that the certification violates the Equal Protections Clause, the Fifth Amendment and Sixth Amendments rights to a grand jury, speedy and public trial, and due process. Additionally, the respondent alleges that civil commitment is premature at this time. Finally, the respondent alleges that there is limited opportunity for conditional release upon a finding that a person is sexually dangerous.

For the reasons set forth herein and those set forth in the petitioner's March 3, 2007 response to Comstock's motion to dismiss <u>See</u> <u>United States v. Comstock</u> (No. 5:06-HC-2195-BR, November 6, 2006, D.E. #15), the petitioner's April 5, 2007 response in opposition of the motion to dismiss and petition for hearing (<u>id.</u> at D.E. #21) and the reasons within Judge Britts's September 7, 2007 Order (<u>id.</u> at D.E. #32) on those matters, respondent's claims fail.

Petitioner requests an evidentiary hearing as previously reserved by the respondent.

2

ARGUMENT

I.  Section 4248 is the statutorily proscribed mechanism for the determination of those who are certified as sexually dangerous.

In enacting the Adam Walsh Act, Congress created a comprehensive scheme that both recognizes the need to protect individuals and society from sexually dangerous persons and protects the rights of the individuals who are identified for commitment. The Act authorizes the Attorney General, the Director of the Bureau of Prisons, or his designee, a senior government official to certify a person as sexually dangerous. 18 U.S.C. § 4248(a). Filing the certificate triggers a series of mandatory procedures that require the United States to produce evidence in support its certification by clear and convincing evidence.

Although the respondent, within its motion, alleges that certification is "premature" at this time, a hearing is the precise mechanism to determine whether commitment is appropriate. Specifically, the statute states that a hearing "shall" be held "to determine whether the person is a sexually dangerous person." Id.

Moreover, the statute states that the evidentiary hearing shall be held in accordance with the well-established procedures and protections of 18 U.S.C. § 4247(d), including the rights "to testify, to present evidence, to subpoena witnesses on his

3

behalf, and to confront and cross-examine witnesses who appear at the hearing." See United States v. Comstock, 130 S. Ct. 1949, 1961 (2010) (holding that § 4248 "is a modest addition to a longstanding federal statutory framework, which has been in place since 1855"). Section 4247(d) also provides the respondent with counsel.

As part of the process that leads to the commitment proceeding, the respondent receives the information that forms the basis of the certification for civil commitment. In the Standing Order issued August 4, 2010, the judges in this district considered the discovery requirements contained in the Local Rules and the Federal Rules of Civil Procedure and incorporated them into a uniform scheduling and discovery process issued by Chief Judge Flanagan. Of note, the United States is required to produce, as part of its initial disclosures, a wide range of materials that form the basis of the individual's certification as a sexually dangerous individual.

II. Relying solely on a previously-ordered term of supervised release is contrary to a congressional enacted statutory scheme and would not protect society from sexually dangerous individuals and would improperly merge criminal and civil processes.

Respondent maintains that existing supervised release orders, imposed by a criminal district court in a completely different proceeding, will "limit[] and control[] . . . the practical effect of dismissing the government's § 4248

4

certification." To the extent respondent wishes to suggest that a previously-ordered supervised release plan may serve the needs of § 4248, such an argument openly conflates criminal and civil statutes and processes. Indeed, the only way to reconcile the overlapping statutes is to disregard the clear legislation from Congress in § 4248 entirely and to treat respondent like any other released inmate, thus nullifying a specifically designated statute.

Respondent inaccurately offers the argument that the respondent can be subjected to civil commitment under § 4248 any time the government believes that the respondent is a risk of sexual harm to others during a term of supervised release term. Once the respondent is released from BOP custody, they are outside the purview of § 4248 and cannot become subject to § 4248 unless the respondent violates a condition of supervised release and is placed back into custody of BOP as a result of that violation of supervised release. See 18 U.S.C. § 4248(a). Accordingly, the only way to provide for conditional release under the statute is after initial commitment.

As a practical matter, respondent's argument would impose substantial burdens on the United States' ability to apply § 4248. By releasing the inmate, the Bureau of Prisons would lose "custody" of the individual and, as a result, would not be able to apply § 4248's procedures quickly if he were to take some

5

action to confirm his sexual dangerousness.  See also 18 U.S.C. § 4248(a) (providing for the certification of sexual dangerousness to be filed in the district "in which the person is confined") (emphasis added).  Respondent appears to concede this point by arguing that he could "face civil commitment" only after his supervised release is revoked and after he is given an additional period of incarceration.

The revocation of supervised release and imposition of an additional criminal sentence would require a criminal hearing and would require the United States to prove some violation, for example, additional sexually violent criminal conduct, as part of that hearing.  18 U.S.C. § 3583(e).  Similarly, the United States would have to engage in a criminal proceeding if it wished to alter the terms of the respondent's supervised release.

In essence, respondent wishes to require the United States to pursue another criminal proceeding before it may even initiate the civil commitment process that Congress has constructed.  This is neither contemplated nor required within the Act. Additionally, respondent's claim that dismissing the current § 4248 certification and releasing him into the public "would not pose a serious risk of harm to others" is without basis, given that respondent reaches this conclusion prior to any sort of evidentiary hearing that would determine whether he is sexually

6

dangerous.[1]

III. Conditional release properly protects the interests of the
community and those designated as sexually dangerous.

Respondent seeks to use a criminal process, supervised release, to purportedly accomplish the same ends accomplished civilly through § 4248. Congress, through § 4248, has provided a civil means of accomplishing conditional release into the community. Even after a person is found to be sexually dangerous, § 4248(e) provides an avenue whereby that person may be released, if certain conditions are met.

Respondent also inaccurately states that conditional release is only available at the discretion of the BOP. In arguing this the respondent states that conditional release is met only if BOP criteria are met, suitable housing is found, and approval of the Probation office where the respondent intends to lives approves. These assertions are not true. The statute clearly states that conditional release is at the discretion of the Court after 180 days, upon petition of the respondent. 18 U.S.C. §§ 4248(e) and

---

[1] Respondent's cites <u>United States v. Chairse</u>, 18 F. Supp. 2d 1021 (E.D. Minn. 1998), to suggest that supervised release alone will serve the same interests as the civil commitment process is curious. In <u>Chairse</u>, the district court, after a hearing, denied the United States' petition to civilly commit an inmate pursuant to 18 U.S.C. § 4246 upon finding that release would not create a substantial risk of injury to others. After finding this, the Court notes that in spite of the government failing to meet the high burden of proving that he will create a risk of injury to others, conditional release may provide incentives to comply while out of custody. <u>Chairse</u>, 18 F. Supp. 2d at 1032.

7

4247(h).

Respondent's criticism of this process, Memorandum at 3-4, ignores the purpose of this civil commitment regime.  In upholding Congress' authority to enact § 4248, the Supreme Court noted that the United States "has the constitutional power to act in order to protect nearby (and other) communities from the danger federal prisoners may pose." <u>Comstock</u>, 130 S. Ct. at 1961.  By enacting § 4248, Congress sought to protect those nearby communities through its comprehensive and rigorous civil commitment process.  Thus, Congress has decided that the focus should not be on "ensur[ing]" the release of someone determined by a court to be sexually dangerous, Memorandum at 3, but instead should be on protecting the community.  The Supreme Court has consistently upheld involuntary commitment statutes that detain persons who have serious difficulty controlling their behavior because of mental illness, and therefore pose a danger, provided the confinement takes place pursuant to proper procedures and evidentiary standards. <u>See</u> <u>Kansas v. Crane</u>, 534 U.S. 407, 409-10 (2002).[2]

Additionally, respondent's claim that an individual's mere certification as a sexually dangerous person carries a "stigma"

---

[2]  It has also held that the determination of mental illness and dangerousness need only be shown by clear and convincing evidence to satisfy due process. <u>Addington v. Texas</u>, 441 U.S. 418 (1979).

8

Case 5:07-hc-02101-BO   Document 32   Filed 10/13/10   Page 8 of 18

and a "lifelong burden" is not cognizable.  <u>Iota Xi Chapter Of Sigma Chi Fraternity v. Patterson</u>, 566 F.3d 138, 147-148 (4th Cir. 2009) ("In <u>Paul v. Davis</u>, the Court made clear that there is no constitutional right to be free from stigma.") (citing <u>Paul v. Davis</u>, 424 U.S. 693 (1976)).

IV. The 18 U.S.C. § 4248 Certification Process Provides Notice and Opportunity to be Heard Within the Civil Scheme.

Respondent's Equal Protection argument fails because it again ignores the procedures that § 4248 provides for individuals who are certified as sexually dangerous.

A. Equal Protection:

1. Title 18 U.S.C. § 4248 does not require inclusion of conduct or diagnosis within the certification.

As other courts have recognized, civil commitment schemes based upon certification of a person through initial agency determination such as § 4248 are not sui generis; rather they have been upheld consistently since the nineteenth century.  <u>U.S. v. Volungus</u>, 595 F.3d 1,6 (1st Cir. 2010)(citing the numerous federal statutes that provide for those in federal custody to be civilly committed).  In crafting Title 18 U.S.C. § 4248 of the Adam Walsh Act, Congress created a coherent and comprehensive scheme to provide for the civil commitment of certain sexually dangerous individuals, initiated by the certification from the BOP.

The certification requirement within § 4248 initiates the

9

commitment process by requiring a senior official within the Bureau of Prisons (BOP) to certify someone as sexually dangerous based upon the medical and criminal history information reviewed by BOP. This certification triggers civil proceedings similar to those used in other civil commitment statutes. <u>See e.g.</u> 18 U.S.C. 4246(a). After the certification, the respondent receives additional notice of the basis of the certification through the discovery processes and requirements required by the Rules of Civil Procedure, this Court's Local Rules, and this Court's Standing Order apply to these proceedings. Those discovery requirements provide the inmate with the information that led to his certification and provide him with the opportunity to request additional information from the United States in order to challenge or explain the underlying information.

Following discovery, the respondent receives a hearing in which he has meaningful procedural and substantive protections, as described in 18 U.S.C. § 4247. Thus, this certification is only one part of the process that provides the inmate with the information necessary to prepare for a hearing.

>   2.  The respondent has adequate notice and opportunity to be heard in a commitment hearing.

In filing the certificate, the government initiates the statutory due process scheme in which the respondent is given an opportunity to be heard. However, it is not the sole document which provides notice to the individual. As noted previously,

the certificate will provide notice and trigger the applicable disclosure obligations. The district court may order a forensic examination that, in conjunction with the certificate, provides the respondent additional notice of the factual and diagnosis basis of the underlying certificate. A forensic report was completed in this case.[3]

The civil commitment process underlying § 4248, including the certification, provides a respondent with adequate due process. See United States v. Carta, 592 F.3d 34 (1st Cir. 2010) (rejecting respondent's due process challenges to § 4248). The first step which guarantees due process within the statute occurs when the Director of the Bureau of Prisons, or the Attorney General, certifies a person as sexually dangerous by transmitting that certification to the district court. 18 U.S.C. § 4247(a). The civil commitment hearing provides additional opportunity to be heard, present evidence to rebut the government's evidence and ultimately demonstrate that he is not a sexually dangerous person.

B. Fifth and Sixth Amendment claims.

Respondent alleges that the certification process "initiates criminal, and not civil proceedings." Memorandum at 6. In support of these claims, the respondent offers that the certification

---

[3] In the case of the Respondent, the initial forensic report was filed with the Court as a sealed exhibit, with a copy provided to respondent's counsel.

11

violates the Fifth and Sixth Amendment rights to a grand jury, to a speedy trial, and right to be informed of the charges against him.

In all of these claims, the respondent is asking for the application of criminal procedure over a civil scheme. Courts have rejected a requirement for jury trials in civil commitments under the Due Process Clause, United States v. Sahhar, 917 F.2d 1197, 1206-07 (9th Cir.1990), cert. denied, 499 U.S. 963, 111 S. Ct. 1591, 113 L.Ed.2d 655 (1991),and the Sixth and Seventh Amendments, see e.g., Hernandez-Carrera v. Carlson, 547 F.3d 1237, 1256 (10th Cir.2008), cert. denied, 2009 WL 1982389 (Dec. 14, 2009); Poole v. Goodno, 335 F.3d 705, 710-11 (8th Cir.2003). The First Circuit declined to extend the right to a grand jury or a preliminary cause hearing to those awaiting civil commitment hearings under 18 U.S.C. § 4248. Carta, 923 F.3d at 42 (holding that the failure to require screening by a neutral magistrate does not facially invalidate the statute)(internal citations omitted)). Ultimately, the civil scheme meets constitutional requirements as a civil, not criminal process.

> C. The certificate establishes the requisite mental illness and dangerousness to initiate a civil commitment proceeding.

Respondent's claims that the certification processes are arbitrary and without basis. Section 4248(a) discusses in detail the procedures for filing the certificate but does not lay out

12

specific substantive requirements:

> (a) Institution of proceedings.--In relation to a person who is in the custody of the Bureau of Prisons, or who has been committed to the custody of the Attorney General pursuant to section 4241(d), or against whom all criminal charges have been dismissed solely for reasons relating to the mental condition of the person, the Attorney General or any individual authorized by the Attorney General or the Director of the Bureau of Prisons may certify <u>that the person is a sexually dangerous person</u>, and transmit the certificate to the clerk of the court for the district in which the person is confined. The clerk shall send a copy of the certificate to the person, and to the attorney for the Government, and, if the person was committed pursuant to section 4241(d), to the clerk of the court that ordered the commitment. The court shall order a hearing to determine whether the person is a sexually dangerous person. A certificate filed under this subsection shall stay the release of the person pending completion of procedures contained in this section.

18 U.S.C. § 4248(a)(emphasis added)

The certification in this case clearly states all of the elements which the government must prove at the hearing. Absent a more particular requirement in the statute, this certification is sufficient.

As the introductory line for § 4248(a) notes, the filing of the certificate merely triggers an "institution of proceedings." Once the certificate is filed, the statute provides that the Court may order an evaluation and report to be conducted and filed with the Court pursuant to the provisions of 18 U.S.C. § 4247(b) and (c). The filing of the certification initiates the civil commitment process under the provisions of 18 U.S.C. §

13

4247(d). The respondent's certification meets the requirements of § 4248.

The Supreme Court has recognized that where a statute requires "<u>evidence</u> of past sexually violent behavior" coupled with "some additional factor, such as a 'mental illness' or 'mental abnormality', the statute will not violate due process. <u>Hendricks</u>, 521 U.S. at 357-58 (citations omitted)(emphasis added). Accordingly, the certificate which identifies the presence of a mental ailment coupled with evidence of past sexually violent behavior is sufficient to initiate the certification process. The civil commitment hearing, as required by § 4248, will address the sufficiency of the medical and factual basis of the respondent's certification. Accordingly, as argued above, the respondent's remaining arguments, including his citation to <u>Timms v. Johns</u>, should fail and a hearing pursuant to 18 U.S.C. §4248 should be held.

Respondent argues that the certificate does not establish requisite mental illness and dangerousness by alleging that the science underlying the certificate is inadequate. The Supreme Court has recognized that due to the special challenges sexual offenders present, there is both a public interest and scientific basis in addressing the high recidivism and reoffense rate caused by some sex offenders. See <u>McKune v. Lile</u>, 536 U.S. 24, 32 (2002)(noting that sex offenders are much more likely than any

14

other type of offender to be rearrested for a new rape or sexual assault.)[4] Both Congress and the twenty-one states that enacted sex offender civil commitment programs recognized this concern and ultimately, these statutes were held constitutional in <u>Kansas v. Hendricks</u>.

The federal civil commitment statute at issue in this case was carefully drafted with these Supreme Court precedents in mind.[5] As a result, Congress intended that the Act only provide for commitment of a narrow class of mentally ill and sexually dangerous individuals in federal custody. Specifically, a person in federal custody may only be committed under the Act where the government proves that a person has engaged or attempted to engage in sexually violent conduct or child molestation; suffers from a serious mental illness, abnormality, or disorder; and,

---

[4] The <u>Liles</u> record included expert testimony which showed the rate of recidivism of <u>treated</u> sex offenders is estimated at around 15% whereas the rate of recidivism of <u>untreated</u> sex offenders is estimated to be as high as 80%.

[5] This has been the sense of Congress since beginning consideration of a federal sexually dangerous person commitment scheme. Prior bills and committee testimony considering the same scheme for passage have specifically referenced the fact that Congress carefully considered <u>Hendricks</u> and <u>Crane</u> when crafting the legislation. <u>See e.g.</u>, H.R. Rep. 109-218(I), 2005 WL 2210642 (recognizing that the proposed civil commitment scheme is substantively similar to those approved by the Supreme Court in <u>Hendricks</u> and <u>Crane</u>); 151 Cong. Rec. 7887 (2005)(Mr. Sensenbrenner, recognizing that the "[civil commitment scheme] has been carefully drafted to ensure compliance with the Supreme Court decisions approving of such laws in <u>Kansas v Hendrick</u> 1997, and <u>Kansas v. Crane</u> in 2002.")

15

that as a result, would have serious difficulty refraining from sexually violent conduct or child molestation if released. Therefore, based on the substantive provisions of the Act and considering the due process limits set forth in <u>Hendricks</u> and <u>Crane</u>, the scheme does not violate either due process or equal protection.

## CONCLUSION

For these reasons and for the reasons discussed in petitioner's prior responses to respondent's motions to dismiss, the United States asks this Court to DENY respondent's motion to dismiss. Additionally, the petitioner requests that a hearing pursuant to 18 U.S.C. § 4248 be held in accordance with this August 4, 2010 Court's Standing Order.

If the Court should grant the respondent's motion to dismiss, the government requests the Court STAY the Court's Order pending appeal. In the alternative the government would request that the Order allow the government sufficient time to petition the Court of Appeals for an emergency stay pending notice of appeal.

Respectfully submitted this 13th day of October, 2010.

        GEORGE E.B. HOLDING
        United States Attorney

        /s/ R.A. Renfer, Jr.
        R. A. RENFER, JR.
        Assistant United States Attorney
        Chief, Civil Division
        310 New Bern Avenue, Suite 800
        Raleigh, NC 27601-1461
        Telephone: (919) 856-4530
        Facsimile: (919) 856-4821
        N.C. Bar #11201
        Attorney for Petitioner

CERTIFICATE OF SERVICE

I do hereby certify that a copy of the foregoing has been served upon the Office of the Federal Public Defender, counsel for respondent, by electronically filing the foregoing with the Clerk of Court this date, October 13, 2010, using the CM/ECF system which will send notification of such filing to the above.

    /s/ R.A. Renfer, Jr.
R. A. RENFER, JR.
Assistant United States Attorney
Chief, Civil Division
310 New Bern Avenue, Suite 800
Raleigh, NC 27601-1461
Telephone: (919) 856-4530
Facsimile: (919) 856-4821
N.C. Bar #11201
Attorney for Petitioner

18