UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:07-HC-2101-BO

| | |
|---|---|
| UNITED STATES OF AMERICA | RESPONDENT'S PROPOSED |
| v. | FINDINGS OF FACT AND |
| JEFFREY NEUHAUSER | CONCLUSIONS OF LAW |

Comes now the Respondent, Jeffrey Neuhauser, by and through undersigned counsel, and respectfully requests that the Court enter the following findings of fact and conclusions of law in this matter, pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

I.     **INTRODUCTION**

Petitioner, the United States of America ("the government") instituted this civil action on May 22, 2007, seeking to commit Jeffrey Neuhauser ("Mr. Neuhauser" or "Respondent") as a sexually dangerous person pursuant to the Adam Walsh Child Protection and Safety Act of 2006 ("the Act").  18 U.S.C. § 4248. [Docket Entry ("DE") 1.]  The Government filed a certificate stating that mental health personnel for the Federal Bureau of Prisons ("BOP") examined Respondent and issued a preliminary determination that he is sexually dangerous within the meaning of the Act.  A certificate filed under the Act stays Respondent's release from federal custody pending a hearing to determine whether Respondent qualifies for commitment as a sexually dangerous person.  The government's petition was filed fifteen (15) days prior to respondent's scheduled date of release from the BOP custody on June 6, 2007. [*See id.*]

1

An evidentiary hearing and bench trial was held before this Court on November 22-23 and December 1 and 8, 2011. On December 8, 2011, the Court directed the parties to file proposed findings of fact and conclusions of law. After considering the testimony at the evidentiary hearing, the evidentiary record, and the parties' submissions, this Court concludes that although the government has met its burden to demonstrate that Respondent has committed acts of child molestation, the government has failed to establish by clear and convincing evidence that Respondent is sexually dangerous to others as required by the Act. The Court does not reach an opinion on whether the Respondent suffers from a serious mental illness, abnormality, or disorder because even if the Court was to so find, the government has failed to demonstrate that he is sexually dangerous.

## II.     FACTS

1. Jeffrey Neuhasuer was born in 1948 and was sixty (63) years of age at the time of his evidentiary hearing.

2. At the time of his hearing, Mr. Neuhauser had been incarcerated for more than four (4) years after his release date.

3. Mr. Neuhauser's release date from the BOP was June 6, 2007. [DE 1 .]

### A.     __Personal History__

4. Mr. Neuhauser was born into an intact family and has four siblings. (Resp't Ex. 2 at 4.) He was born and raised in Washington, D.C. (Neuhauser testimony at 100.) Mr. Neuhauser received a Master's degree in music from Illinois Wesleyan in 1973. (Resp't Ex. 2 at 12.) He has been gainfully employed since 1971. (Neuhauser testimony at 111-117, 127-130.). The majority of his employment has involved the sales and distribution of musical instruments, work as a

percussion instructor, and employment as a musician with various symphonies and bands. (*Id.*) He has worked for Unicor while incarcerated and has received good work reports. (Resp't Ex. 3 at 77, Neuhauser testimony at 89.)

5. At the age of 14 or 15, Mr. Neuhauser was molested by his parish priest. (Resp't Ex. 2 at 7, Neuhauser testimony at 106-107.) This was a particularly painful experience because the priest who molested Mr. Neuhauser served as a role model at a time when his father was drinking heavily. (*Id.*)

6. Mr. Neuhauser has never been married. (Resp't Ex. 3 at 78.)

7. Mr. Neuhauser has never been diagnosed with alcohol or drug abuse. (*Id.*)

**B.       Criminal and Sexual Offense History**

8. Mr. Neuhauser has no arrests or convictions for any nonsexual crimes. (Pet'r Ex.13.)

9. In 1967, Mr. Neuhauser plead guilty and was convicted of Assault and Battery in the Circuit Court for Montgomery County, Maryland. (Pet'r Ex. 13 at 1658.)

10. In 1985, Mr. Neuhauser plead guilty and was convicted of Contributing to the Sexual Delinquence of a Child in the Circuit Court for McLean County, Illinois. (Pet'r Ex. 13 at 1659.)

11. In 1998, Mr. Neuhauser pleaded guilty before the United States District Court for the Eastern District of Virginia to Interstate Travel with Intent to Engage in Sexual Acts with a Minor. (Pet'r Ex. 10.) He was sentenced to an eighteen-month term of imprisonment followed by a three-year term of supervised release. (Pet'r Ex. 9.)

12. In 1999, Mr. Neuhauser pleaded guilty before the United States District Court for the District of Maryland to Interstate Travel with Intent to Engage in Sexual Acts with a Minor and Distribution of a Visual Depiction of a Minor Engaged in Sexually Explicit Conduct. (Pet'r Ex.

3

13.) He was sentenced to a one-hundred and nineteen months of imprisonment followed by a five-year term of supervised release. (Pet'r Ex. 12.)

### C. Bureau of Prisons Disciplinary History

13. Mr. Neuhauser has no BOP disciplinary infractions. (Resp't Ex. 3 at 80.)

### D. Sex Offender Treatment

14. Mr. Neuhauser has received no Sex Offender Treatment while confined at the Bureau of Prisons. (Pet'r Ex. 3 at 77.) Mr. Neuhauser has independently sought both funding and sex offender treatment if he is released. (Resp't Ex. 17-21.)

### E. Current Status

18. On May 22, 2007, the United States filed the instant action seeking to commit Mr. Neuhauser as a sexually dangerous person under the Adam Walsh Act, 18 U.S.C. § 4248. (Pet'r Ex. 1.) Pursuant to the statute, the filing of this action stayed his release pending the outcome of the proceedings. Mr. Neuhauser completed his criminal sentence on June 6, 2007 and was scheduled to be released that day if the government had not filed the certification pursuant to § 4248. Respondent's § 4248 proceeding was stayed *ab initio* for almost three years while the appellate courts analyzed § 4248's constitutionality. Respondent's case was assigned to this Court on August 6, 2010. [DE 23.]

19. If released, Mr. Neuhauser will be on supervised release for a term of five years. (Pet'r Ex. 9, 12.) The amended conditions of his supervised release include, among others, participation in a program approved by the United States Probation Office for the treatment and monitoring of sex offenders, registering as a sex offender, submit to polygraph testing as part of a sex offender therapeutic program, restrictions on the possession and use of a computer,

4

prohibitions on the access and possession of pornographic material or pictures of juveniles under the age of 18, and no contact with anyone under the age of eighteen. (Resp't Ex. 15.)

## III. EXPERT'S QUALIFICATIONS

20. The government called Dr. Gary Zinik to testify as an expert in this case. Dr. Zinik reviewed Mr. Neuhauser's records and interviewed Mr. Neuhauser.

21. The government also called Dr. Manuel E. Gutierrez as an expert in this case. Dr. Gutierrez reviewed Mr. Neuhauser's records but did not conduct a current interview of Respondent.

22. Respondent called Dr. Richard Wollert as an expert in this case. Dr. Wollert reviewed Mr. Neuhauser's records and interviewed Mr. Neuhauser.

23. Respondent also called Dr. Diane Lytton as an expert. Dr. Lytton reviewed Mr. Neuhauser's records and interviewed Mr. Neuhauser.

24. The parties did not challenge the qualifications of any of the above experts. The Court having reviewed the curriculum vitae of the experts, finds that each individual is qualified by education and experience to offer expert testimony in this matter.

## IV. LEGAL PRINCIPLES

### A. <u>Section 4248 Violates Equal Protection</u>

25. As a preliminary matter, this Court finds that § 4248 deprives Respondent of equal protection of the law under the Fourteenth and Fifth Amendments because there is no rational basis for § 4248's differentiation between individuals in BOP custody and individuals in the general public. *Incorporated by reference, United States v. Timms*, 5:08-HC-01256-BO (Eastern District of North Carolina, filed July 1, 2011).

5

**B.**    **Delay in the Proceedings Violated Respondent's Due Process Rights**

26.  This Court also finds that Respondent was deprived of his due process rights under the Fifth Amendment of the United States Constitution because the government failed to bring Respondent before the court for a civil commitment hearing within a reasonable time after they filed the petition seeking commitment pursuant to § 4248.  *Id.*

**C.**    **18 U.S.C. § 4248 as applied to Respondent Constitutes Criminal Punishment**

27.  This Court finds that the conditions of Respondent's confinement constitute criminal punishment that violates the Double Jeopardy Clause, the Ex Post Facto Clause, the Eighth Amendment prohibition against cruel and unusual punishment, and the jury trial right contained in the Sixth Amendment.

**D.**    **Standard of Proof and Elements Required to be Established**

28.  The government has the burden of proving each element by clear and convincing evidence.  18 U.S.C. § 4248(d).  "[T]he individual's interest in the outcome of a civil commitment proceeding is of such weight and gravity" that this standard is required not only by the Act, but by the Due Process clause of the Constitution."  *Addington v. Texas*, 441 U.S. 418, 427 (1979).  The clear and convincing evidence standard is an "intermediate standard," lying somewhere "between preponderance of the evidence and proof beyond a reasonable doubt."  *Id.* at 425.  "'Clear and convincing' has been defined as evidence of such weight that it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established."  *Jimenez v. DaimlerChrysler Corp.*, 269 F.3d 439, 450 (4th Cir. 2001) (internal quotations and citations omitted).  It has alternatively been described "as meaning 'highly

6

probable.'" *Direx Israel Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 810 n.7 (4th Cir. 1992) (quoting 9 J. Wigmore, Evidence § 2498 (3d ed. 1940)).

29.   To commit Respondent, the government must prove by clear and convincing evidence that Respondent is a "sexually dangerous person," which the Act defines as "a person who has engaged or attempted to engage in sexually violent conduct or child molestation and who is sexually dangerous to others."  18 U.S.C. § 4247(a)(5).  An individual is "sexually dangerous to others" under the Act if he "suffers from a serious mental illness, abnormality, or disorder as a result of which he would have serious difficulty in refraining from sexually violent conduct or child molestation if released."  18 U.S.C. § 4247(a)(6).

309.   This phrase has not been defined by the statute.  The legislative history indicates that it is a direct legislative enactment of the principle of volitional impairment enunciated in *Kansas v. Hendricks*, 521 U.S. 346 (1997) and *Kansas v. Crane*, 534 U.S. 407 (2002).  *See* H.R. Rep. No. 109-218(I) Section-by-Section Analysis and Discussion § 511.  In *Crane*, the Supreme Court stated that the "serious difficulty" requirement is intended to distinguish the "dangerous sexual offender whose mental illness, mental abnormality or mental disorder subjects him to civil commitment, from the dangerous, but typical, recidivist convicted in an ordinary criminal case who, having been convicted and punished for one crime, proceeds through his own free choice to commit another." *Crane*, 413.

31.   A finding of dangerousness is also constitutionally required.  *Kansas v. Crane*, 534 U.S. 407-09, 410 (stating "we have consistently upheld involuntary commitment statutes . . . [when] (1) the confinement takes place pursuant to proper procedures and evidentiary standards; (2) there is a finding of 'dangerousness either to oneself or others,' and (3) proof of dangerousness

7

is "coupled . . . with the proof of some additional factor, such as a 'mental illness' or 'mental abnormality'" (*citing Kansas v. Hendricks*, 521 U.S. 346, 357-58; quotations omitted)). *See also Foucha v. Louisana*, 504 U.S. 71, 82-83 (1992).

32. The Court finds that in this regard, the statute and due process considerations require that, in addition to a volitional impairment, the government must prove by clear and convincing evidence that Respondent poses a risk of reoffense that is significant enough to justify a finding that Respondent is sexually dangerous and therefore can be preventively detained.

33. In this case the government has proven neither. The evidence in this case does not demonstrate that Respondent currently suffers from a volitional impairment. The evidence also demonstrates that the recidivism rates proposed by the government's experts are likely overestimates. Further, even if this Court were to credit the government's experts regarding Respondent's likelihood of recidivism, the statistical evidence presented does not rise to the level of clear and convincing evidence of dangerousness sufficient to justify commitment.

## V.     FINDINGS

### A.     <u>Prior Bad Acts</u>

34. Mr. Neuhauser does not contest that he has engaged in child molestation in the past. This Court finds that the government has established this element by clear and convincing evidence.

### B.     <u>Suffers from a Serious Mental Illness, Abnormality or Disorder</u>

35. Extensive testimony and evidence was submitted with respect to the issue of whether Mr. Neuhauser suffers from a serious mental illness, abnormality or disorder. Both of the Petitioner's experts have diagnosed Mr. Neuhauser with Paraphilia, not otherwise specified,

8

hebephilia.  (Pet'r Ex. 2 and 5.)  Great controversy exists in the psychological field regarding the existence of this diagnosis, when applied with the hebephila specifier.[1]  The Court has reviewed the scientific articles submitted by both parties as well as the decision in *United States v. Carta*, 592 F. 3d 34 (1st Cir. 2010).  Because, as discussed herein, the Court finds that the Petitioner has failed to demonstrate by clear and convincing evidence that Mr. Neuhauser will have serious difficulty refraining from sexually violent conduct or child molestation, the Court need not render an opinion on whether he suffers from a serious mental illness, abnormality or disorder.

### C.    Serious Difficulty Refraining from Child Molestation

36.  In order to commit Mr. Neuhauser, the government must prove that the disorder results in "serious difficulty refraining from sexually violent conduct or child molestation if released."  18 U.S.C. § 4247(a)(6).  As discussed previously, this term implies a volitional impairment.

---

[1] Hebephilia is not listed nor an accepted mental disorder in the American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders* ("DSM")*.*  Hebephilia has currently been proposed by to be included as a mental disorder in the revision of the DSM, however it has been rejected as a proper mental disorder by numerous psychologists including the Chairman of the DSM, Dr. Frances and the Editor of the DSM, Dr. First.  Drs. Frances and First have opined that hebephilia is not a paraphilia because the sexual arousal pattern that would define it, attraction to pubescent children, is not inherently deviant.  Allen Frances & Michael First, *Hebephilia Is Not a Mental Disroder in DSM-IV-TR and Should Not Become One in DSM-5,* 39 J. Am. Acad. Psychiatry Law 78-85 (2011).  *See also* Karen Franklin, *Hebephilia: Quintessence of Diagnostic Pretextuality*, 28 Behav. Sci. & L. 751-68 (2010); *especially id.* at 764 (explaining that "hebephilia is being advanced as a mental disorder by a small cadre of government experts intent on legitimizing the indefinite detention of men who have committed culturally repugnant acts with minors and who do not meet the diagnostic criteria for other, more established disorders"); Richard Green, *Hebephilia is a Mental Disorder?*, 5(1) Sexual Offender Treatment 1 (2010) ("Diagnosing hebephilic behavior as a mental disorder brushes aside common patterns of psychosexual development, sidesteps cultural influences on sexuality, ignores historic precedents, insults much of Europe and elsewhere that legalizes sex with 14 year olds, or younger, and attempts to insulate psychiatry as an agent of social control.").

9

37. The DSM-IV-TR is clear that the fact that someone has been diagnosed with a mental illness or disorder does not answer the question of whether that person's volition is impaired. The manual states:

> It is precisely because impairments, abilities and disabilities vary widely within each diagnostic category that assignment of a particular diagnosis does not imply a specific level of impairment or disability. The fact that an individual's presentation meets the criteria for DSM diagnoses does not carry any necessary implications regarding the individual's degree of control over the behaviors that may be associated with the disorder. Even when diminished control over one's behavior is a feature of the disorder, having the diagnosis in itself does not demonstrate that a particular individual is or was unable to control his or her behavior at a particular time.

DSM-IV-TR at xxxiii**.**

38. This Court finds that the government has not shown by clear and convincing evidence that Respondent currently presents a lack of volitional control such that he would have serious difficulty refraining from sexually violent conduct or child molestation if released.

## VI.     DANGEROUSNESS AND RISK ASSESSMENT

### A.     <u>Introduction</u>

39. All of the experts in this case conducted a risk analysis based on empirical tools and actuarial instruments to evaluate, quantify, and support their dangerousness determination.

40. No psychological tests or actuarial instruments have been developed that predict with certainty an individual's risk of future sexual offending. The risk instruments are based on group data and provide risk estimates of defined sample groups to which an individual is compared. "The recidivism rates contained in the actuarial tables are the product of the amalgamated risk characteristics of the group and, therefore cannot be ascribed to a particular individual since the risk factors for the individual may vary substantially from that of the group." Theodore

Donaldson and Brian Abbott, *Prediction in the Individual Case: An Explanation and Application of its Use with the Static-99R in Sexually Violent Predator Risk Assessments*, 29(1) American Journal of Forensic Psychology 7 (2011). The actuarial instruments provide only group prediction rates on risk of re-offending. The instruments do not provide individual rates of reoffending. *Id.*

41. In evaluating Mr. Neuhauser, all of the experts utilized a clinical analysis combined with actuarial instruments and psychological tests to determine if Mr. Neuhauser presents a serious risk of reoffending.

42. Four expert opinions were offered by the parties on the issue of whether Mr. Neuhauser meets the criteria for commitment pursuant to 18 U.S.C. § 4248. Dr. Zinik and Dr. Gutierrez, the government's experts, both opined that Mr. Neuhauser is a sexually dangerous person as defined by the Act. Dr. Wollert and Dr. Lytton, the Respondent's experts, opined that Mr. Neuhauser is not a sexually dangerous person and is not at risk of reoffending if released.

43. For the reasons set forth below, the Court finds that the government has not established by clear and convincing evidence that Respondent currently lacks volitional control and would have serious difficulty refraining from sexually violent conduct or child molestation.

B.    **Expert Opinions**

1. **Dr. Gary Zinik**

44. Dr. Zinik authored an evaluation report dated October 1, 2011. (Pet'r Ex. 2.) He opined, based on his examination of Mr. Neuhauser and review of his records, that Mr. Neuhauser meets the criteria as a sexually dangerous person as described in 18 U.S.C. § 4248. (*Id.*) His opinion appears to be based on both a clinical analysis of Mr. Neuhauser and an assessment of actuarial instruments. (*Id.*)

11

45.  Dr. Zinik diagnosed Mr. Neuhauser with paraphilia not otherwise specified, hebephilia, sexual preference for males, exclusive type.  (Pet'r Ex. 2 at 1993.)

46.  In his report, Dr. Zinik opined that Mr. Neuhauser would be at risk to sexually reoffend well into his 70's.  (Pet'r Ex. 2 at 2002).  In summarizing his opinion on risk, Dr. Zinik noted that Mr. Neuhauser scored in the high needs/risk range on the Structured Risk Assessment Forensic Version ("SRA-FV").  On the actuarial scales, Mr. Neuhauser scored in the high-moderate risk range for sexual reoffense on the Static-99R and in the moderate risk range on the Static-2002R and the MnSOST-R.  He noted that it was his opinion that Mr. Neuhauser showed no genuine remorse for his sex offending, that he has a persistence of sexually offending, has never had an intimate relationship with an adult man (or woman), and "his lust for pubescent boys is so deep and his unfulfilled longing is so great that I suspect he will always harbor the fantasy of someday meeting his dream boy lover."  (Pet'r Ex. 2 at 2002.)

47.  In reaching his October 2011 conclusion, Dr. Zinik  utilized several actuarial instruments and psychological tests.  He used the Static-99 Revised, the Static-2002 Revised,[2] and

_____

[2]  In 1999, Dr. Karl Hanson, a statistical researcher with the Canadian Office of Public Safety, developed the Static-99, an actuarial instrument consisting of ten factors.  The ten factors are: whether the offender is younger than 25 years old, whether the offender ever lived with a lover for at least two years, index non-sexual violence, prior non-sexual violence, number of prior sentencing dates, any unrelated victims, any stranger victims, and any male victims.  The Static-99 scores the offender on a scale from 0 to 12.  Each score is associated with a risk level (i.e. high, medium, low).  Each score was also associated with a percentage of recidivism over 5 years, 10 years, and 15 years.  Dr. Hanson derived the original recidivism percentages associated with each score on the Static-99 by retrospectively scoring the instrument on a group of 1,086 offenders released from incarceration in Canada and the United Kingdom between 1958 and 1993 with known 5, 10, and 15 year recidivism rates after release.  The average age of these 1,086 individuals was 33.5 years old.  The Static-99 has been revised and replaced by the 99-R and revised again in 2002.  (Resp't Ex. 7 at 18.)

In the fall of 2008, the developers of the Static-99 issued new recidivism percentages

the Minnesota Sex Offender Screening Tool-Revised (MnSOST-R) [3] actuarial instruments. Two

of the actuarial instruments placed Mr. Neuhauser in the moderate risk category and the Static-

99R placed him in the moderate/high risk category.

48. When quantifying recidivism rates for individuals who achieved the same score as Mr.

Neuhauser on the Static-99R and the Static-2002R, Dr. Zinik compared him to the nonroutine

norms group, a group of offenders how have been preselected for treatment and are considered at

high risk. (Pet'r Ex. 2 at 1998.) As noted in Dr. Zinik's report, the Static-99R and Static-2002-R

have multiple reference groups for comparison (routine correctional, non-routine correctional,

pre-selected for treatment, preselected for risk/need) and evaluators are instructed to select and

use the reference group(s) that best fit selection criteria of the individual being evaluated. (*Id.*)

---

associated with the different scores on the instrument. The prior recidivism percentages
associated with the original Static-99 were derived from sex offenders released from 1958 to
1993, these newer recidivism percentages are based on contemporary samples of sex offenders
who were released from incarceration in the 90s and after. The new recidivism percentages
associate with the different scores on the Static-99 are substantially lower than the old recidivism
percentages. (*Id.*) *See also* A. Harris et al., *Are New Norms Needed for the Static-99* (presented
at the 27th Annual Research and Treatment Conference of the Association for the Treatment of
Sexual Abusers, Atlanta, Georgia, Oct. 23, 2008).

   [3] The MnSOST-R was developed by Epperson, Kaul and Huot in association with the
Minnesota Department of Corrects in 1995 and subsequently revised. The development sample
for the MnSOST-R was comprised of 256 sex offenders incarcerated in the state of Minnesota
for felony sex offenses. The MnSOST-R is a sixteen question instrument comprised of twelve
static factors and four dynamic factors. The score ranges from 16 to 31. Each score is associate
with likelihood of re-arrest over a period of six years. Douglas Epperson et al., *Minnesota Sex
Offender Screening Tool–Revised (MnSOST-R): Development, Validation, and Recommended
Risk Level Cut Scores* (December 2003.) In January 2012, Minnesota will cease utilizing the
MnSOST-R in favor of an improved actuarial tool. Grant Duwe, Director of Research and
Evaluation, Minnesota Dep't of Corrections, The Minnesota Sex Offender Screening Tool-3,
Presentation at the Conference for the Association for the Treatment of Sexual Abusers (Nov. 4,
2011).

Dr. Zinik did not compare Mr. Neuhauser's Static-99R or Static-2002R scores to any other sample groups when listing recidivism rates. (*Id.*) Dr. Zinik noted that individuals with the same scores on the Static-99R and Static-2002R as Mr. Neuhauser in the nonroutine group recidivated at a rate of 19.6 % in five years and at a rate of 27.7 % in ten years on the Static-99R and at a rate of 16.4% in five years and at a rate of 25.1% in ten years on the Static-2002R. (Pet'r Ex. 2 at 1999.) He scored Mr. Neuhauser on the MnSOST-R as a 7, which associated him with a group of individuals 20-25% of whom had been arrested for reoffense after six years. (*Id.*)

### 2. Dr. Manuel Gutierrez

49. Dr. Gutierrez, a psychologist employed by the BOP, opined based on his review of the records that Mr. Neuhauser suffers from a serious mental illness, abnormality, or disorder, and as a result would have serious difficulty in refraining from sexually violent conduct or child molestation. (Pet'r Ex. 5 at 1303.) He diagnosed Mr. Neuhauser with paraphilia not otherwise specified, hebephilia. (Pet.r Ex. 5 at 1300).

50. In assessing Mr. Neuhauser's risk of recidivism Dr. Gutierrez used the Static-99R in his updated report dated June 13, 2011. (Pet'r Ex. 5 at 1302.) He opined that Mr. Neuhauser's score on the Static-99R places him in the moderate-high risk category for recidivism. (*Id.*) Dr. Guiterrez also referred to the dynamic risk factors identified in his previous report dated August 2007, which included intimacy deficits, attitudes supportive of sexual assault, poor sexual self-regulation, and the presence of anger/hostility problems. (*Id.*) It was his opinion that because Mr. Neuhauser had not participated in any form of counseling or treatment that he has not addressed the identified dynamic risk factors. (*Id.*) He noted that Mr. Neuhauser's advanced age was not considered as a mitigating factor because it is unknown how his age has effected his libido and

14

ability to act on his sexual deviancy. (*Id.*) It was also his opinion that Mr. Neuhauser has not appreciated the wrongfulness or harmfulness of his sexually violent conduct. (Pet'r Ex. 5 at 1303.)

### 3. Dr. Richard Wollert

51. Dr. Wollert evaluated the Respondent and opined based on his examination of Mr. Neuhauser and review of his records that Mr. Neuhauser does not suffer from any mental disease, abnormality or disorder and is unlikely to sexually recidivate. (Resp't Ex. 1 at 56.) Dr. Wollert prepared an extensive report in which he reviewed Mr. Neuhauser's life history, commented on the reports and opinions of both Dr. Zinik and Dr. Gutierrez, and exhaustively reviewed the research and literature addressing the psychological controversy over a diagnosis of hebephilia. (Resp't Ex. 1.) Dr. Wollert also testified extensively about the diagnosis of hebephilia that was found by both Dr. Zinik and Dr. Gutierrez. (Wollert testimony at 10-29.) He opined specifically in addressing the term hebephilia, that a mental disorder is supposed to be some sort of dysfunction in the individual and that it cannot be defined as something that breaks the law. (Wollert testimony at 22-23.)

52. In assessing Mr. Neuhauser's risk of recidivism, Dr. Wollert used several actuarial instruments, namely the Static-99R, Static-2002R, and the Multisample Age Stratified Table of Sexual Recidivism Rate ("MATS-1").[4] (Resp't Ex. 1 at 12-13.) Dr. Wollert noted that if Mr.

---

[4] The MATS-1 is a recently developed actuarial instrument for estimating sexual recidivism risk that was derived from data for 9,305 sex offenders. The MATS-1 was complied from an age-stratified table for Static-99 and an age-stratified table from the Automated Sexual Recidivism Scale. The MATS-1 validates the "age invariance effect" that the risk of sexual recidivism declines with advancing age and shows that age-restricted tables understimate risk for younger offenders and overestimate risk for older offenders. Richard Wollert et al., *Recent Research (N=9,305) Underscores the Importance of Using Age-Stratified Actuarial Tables in Sex*

15

Neuhauser scored a five on the Static-99R and a five on the Static-2002R, this score is associated with a reoffense rate of 10.7% in 5 years. (Resp.t Ex. 1 at 48.) On the MATS-1, Dr. Wollert scored Mr. Neuhauser a four, which equates to an 8 year reoffense rate of 6.4% in the development sample for persons sixty years old and older. (Resp't Ex. at 54.)

53. Dr. Wollert testified that in addition to the actuarial instruments, he considered several other factors in rendering his opinion on Mr. Neuhauser's likelihood of recidivism. (Wollert testimony at 39-41.) He testified that Mr. Neuhauser's ability to control his behavior while in the community; the pattern of his offending, namely his first victim was by force and the later victims willingly participated even though they could not legally consent due to their age; and the fact that he was not subject to any deterent sanctions such as a prison sentence, until his last offenses in 1999. (*Id.*) Lastly, Dr. Wollert testified that if hebephilia was an accepted diagnosis that Mr. Neuhauser still does not meet the criteria and would not have difficulty refraining from the target behavior. (Wollert testimony at 60-61.)

### 4.    Dr. Diane Lytton

54. Dr. Lytton evaluated the Respondent and opined based on her examination of Mr. Neuhauser and review of his records that it was her opinion that there is no evidence to conclude that Mr. Neuhauser has a paraphilia, or sexual deviation disorder. (Resp't Ex. at 80.) Dr. Lytton, like Dr. Wollert commented on the diagnosis of paraphilia not otherwise specified, hebephilia, and noted "that it is an inappropriate diagnosis in this instance, and that pathologizing, or making a criminal action into a mental illness, was never the intention of the diagnostic category of

---

*Offender Risk, Assessments*, (22) Sexual Abuse: A Journal of Research and Treatment 472-90 (2010).

paraphilia NOS." (Resp't Ex. 3 at 83.) She further opined that "based on an analysis of research-supported risk factors and risk instruments, he is low risk to reoffend" and does not meet the criteria for commitment under the sexually dangerous persons ("SDP") law. (Resp't Ex. at 86.)

55. In assessing Mr. Neuhauser's risk of recidivism, Dr. Lytton used several actuarial instruments, namely the Static-99R and the MATS-1. (Resp't Ex. 3 at 84-86.) Dr. Lytton noted in that a recent publication by the developers' of the Static-99R reflects a 5-year estimated risk of recidivism of about 8 percent for individuals who scored the same as Mr. Neuhauser. (Resp't Ex. 3 at 85.) On the MATS-1, Dr. Lytton scored Mr. Neuhauser a four or five, which equates to an 8 year reoffense rate of 7% in the development sample for persons sixty years old and older. (*Id.*)

56. Dr. Lytton testified that in addition to the actuarial scores, Mr. Neuhauser's lengthy periods of time in the community without reoffending, the pattern of his offenses de-escalating from forced encounters with the first victim to willing participation by later victims even though they could not legally consent, and the increasing consequence of his convictions resulting in a prison sentence all diminished his likelihood recidivism.

**C. Jeffrey Neuhauser**

57. Mr. Neuhauser testified that he is deeply sorry and remorseful for what he has done to his victims. (Neuhauser testimony at 108, 114.) He admitted that he terrorized his first victim. (Tr. at 108.) He also realizes that his later victims, which he rationalized as consensual encounters, were no consensual as the minor could not consent. (Neuhauser testimony at 114.) He has dedicated himself to never reoffending and never coming back to prison. (Neuhauser testimony at 147.)

## VII. CONCLUSIONS OF LAW

58.  The Court finds that § 4248 deprives Respondent of equal protection of the law under the Fourteenth and Fifth Amendments to the United States Constitution because there is no rational basis for § 4248's differentiation between individuals in BOP custody and individuals in the general public.

59.  The Court finds that Respondent was deprived of his due process rights under the Fifth Amendment of the United States Constitution because the government failed to bring Respondent before the Court for a civil commitment hearing within a reasonable time after they filed the petition seeking commitment pursuant to § 4248.

60.  The Court finds that the conditions of Respondent's confinement constitute criminal punishment that violates the Double Jeopardy Clause, the Ex Post Facto Clause, the Eighth Amendment prohibition against cruel and unusual punishment, and the jury trial right contained in the Sixth Amendment.

61.  The Court finds that Respondent has committed acts of child molestation in the past.

62.  The Court finds that it does not need to address the issue of whether or not Respondent suffers from a serious mental illness, abnormality, or disorder.

63.  The Court finds that the government has not proven by clear and convincing evidence that Respondent would have "serious difficulty refraining from sexually violent conduct of child molestation if released."

64.  The United States Supreme Court precedent makes clear that the "serious difficulty" language does not require total or complete lack of control, but does require that it must be difficult, if not impossible, for the person to control his dangerous behavior.  *See Kansas v. Crane*, 534 U.S. 407, 411 (2002) (citing *Kansas v. Hendricks*, 521 U.S. 346, 358 (1997)).  The

18

conflicting evidence concerning the probability of Mr. Burkhardt's reoffending cannot support a finding that he would have "serious difficulty" in refraining from child molestation.

65.   The Court has been presented with four opinions about Respondent's risk of reoffense in the event he is released.  The Court has considered the information and finds this information relevant to its determination of Respondent's sexual dangerousness.  Having considered the reports, forensic evaluations, and testimony of the four experts in this case, the Court finds that the government has not proven dangerousness by clear and convincing evidence sufficient to justify commitment.

66.   The Court accords the opinions of Dr. Zinik and Dr. Gutierrez less weight than the other expert opinions. The Court has significant concerns about the fact that both of these psychologists discounted Mr. Neuhauser's advanced age, the pattern of his offending, the lack of deterent punishment until his last offense, and his significant amount of time in the community without reoffending.

67.   The Court finds the opinions of Dr. Wollert and Dr. Lytton to be the most well-reasoned and persuasive.  The Court is persuaded that Dr. Wollert's and Dr. Lytton's method of synthesizing the available data and applying it to Mr. Neuhauser gives the Court a more accurate depiction of Mr. Neuhauser's risk of reoffending.   These psychologists utilized some of the same actuarial instruments and psychological tests as Dr. North and Dr. Gutierrez; however, they provided a more complete discussion of the tests' strengths and weaknesses.  They also used the most recently developed actuarial instrument, the MATS-1, which uses the same information as the Static-99R but quantifies the data in a more systematic manner to account for an individual's age.  Mr. Neuhauser is sixty-three years old—which all of the experts agree decreases his risk of

19

reoffending.  Dr. Wollert and Dr. Lytton's opinion are consistent with the actuarial instruments which produced a moderate rate of recidivism for individuals who score the same as Mr. Neuhauser on these tests.  The questions before this Court is whether Mr. Neuhauser is currently a serious risk of reoffending.  The Court finds Dr. Wollert and Dr. Lytton's opinion on this issue to be the most informative, supported by actuarial instruments and psychological tests and most persuasive on the issue before the Court.

68.  Lastly, the Court finds Mr. Neuhauser to be a credible witness.  He appears to be seriously committed to living a law abiding life if released.  He has independently sought funding and sex offender treatment and has agreed to the onerous conditions of the five years of supervised release to which he will be subject upon release.  He appears to be genuinely remorseful for the damage he has caused his victims and appears to have an understanding of his behavior and what can lead to his reoffending.

## CONCLUSION

For the foregoing reasons, the Court should enter judgment in this matter that Jeffrey Neuhauser is not a "sexually dangerous person" and order his release from the custody of the federal Bureau of Prisons so that he may commence his term of supervised release.

Respectfully submitted this 22nd day of December, 2011.

THOMAS P. MCNAMARA
Federal Public Defender

**/s/ *Suzanne Little***
SUZANNE LITTLE
Assistant Federal Public Defender
E-mail: Suzanne_little@fd.org
VA State Bar No. 31344

**/s/ *Raymond Tarlton***
Assistant Federal Public Defender
E-mail: Raymond_Tarlton@fd.org
N.C. State Bar No. 38784

ATTORNEYS FOR RESPONDENT
Office of the Federal Public Defender
150 Fayetteville Street, Suite 450
Raleigh, North Carolina 27601
Telephone: 919-856-4236; Fax: 919-856-4477
LR 57.1 Counsel, Appointed

21

*CERTIFICATE OF SERVICE*

I HEREBY CERTIFY that a copy of the foregoing was served upon:

**G. Norman Acker, III**           **Michael Bredenberg**
**R.A. Renfer, Jr.**               **Michael E. Lockridge**
**David t. Huband**                Bureau of Prisons, Legal Dept.
U. S. Attorney's Office            P.O. Box 1600, Old Highway 75
Rm. 800, 310 New Bern Ave.         Butner, NC 27509
Raleigh, NC 27601                  Email: mbredenberg@bop.gov
Email: norman.acker@usdoj.gov      Email: mlockridge@bop.gov
Email: rudy.renfer@usdoj.gov
Email: david.huband@usdoj.gov


by electronically filing the foregoing with the Clerk of Court on December 22, 2011 using the CM/ECF system which will send notification of such filing to the above:

This the 22nd of December, 2011.

/s/ *Suzanne Little*
SUZANNE LITTLE
Assistant Federal Public Defender
Office of the Federal Public Defender
Attorney for the Respondent
150 Fayetteville Street, Suite 450
Raleigh, North Carolina 27601
Telephone: 919-856-4236
Fax: 919-856-4477
E-mail: Suzanne_little@fd.org
VA State Bar No. 31344
LR 57.1 Counsel
Appointed